COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Agee
Argued at Chesapeake, Virginia


BRIAN LEE MORRISON
                                            OPINION BY
v.    Record No. 2953-00-1           JUDGE ROBERT P. FRANK
                                          JANUARY 8, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                 H. Thomas Padrick, Jr., Judge

        Michael J. Woods for appellant.

        H. Elizabeth Shaffer, Assistant Attorney
        General (Randolph A. Beales, Attorney
        General, on brief), for appellee.


     Brian Lee Morrison (appellant) was convicted in a bench

trial of selling drug paraphernalia, in violation of Code

§§ 18.2-265.1-3.  On appeal, he contends the trial court applied

an improper scienter standard and erred in ruling the evidence

was sufficient to convict him.  For the reasons stated, we

affirm the conviction.

                         I.  BACKGROUND

     Sometime in January of 2000, Trooper R. Thompson of the

Virginia State Police visited the Fatty Shack, a store in

Virginia Beach.  He photographed several of the items for sale

in the store -- bongs, roach clips, and other drug

paraphernalia.  Thompson saw stickers of mushrooms and a phrase,

"4:20," on some of the pipes and bongs.  He also saw some signs

saying "18 years or older" and "tobacco use only."  He noticed a flavored Egyptian herb for sale, but saw no cigarettes or tobacco products.

Thompson also spoke to appellant, the owner of the store, and gave him a copy of Virginia's drug paraphernalia statutes. Thompson advised appellant he intended to show the photographs of the store's inventory to the Commonwealth's Attorney. Appellant gave Thompson two catalogs, one from Gator Lou and one from Golden Lion, from which he had purchased some of his inventory.  Appellant said he did not have a tobacco license.

Approximately one week later, Thompson returned to the store.  He advised appellant that he was selling drug paraphernalia and must cease.  Thompson did not issue a summons then because he was preparing for a military deployment and did not want to create a speedy trial issue.

On June 15, 2000, Thompson returned to the Fatty Shack.  He found the store had increased in size and continued to sell bongs, roach clips, and other paraphernalia.  He seized several of these items.  Appellant was not present that day.

When Thompson returned to the store on June 22, appellant was there.  The trooper issued a summons to appellant for selling drug paraphernalia.  On this occasion, Thompson saw tobacco products for sale that he had not seen on his previous visits.  Thompson did not search for, nor did he find, any

marijuana or controlled substances in the store.  Some of the pipes he seized had labels identifying them as tobacco pipes.

Thompson testified appellant never referred to the seized items as "bongs" but instead as "water pipes."  Thompson further testified appellant said he would not sell these items to anyone who referred to them as "bongs."  In fact, appellant's posted store rules stated:

> You must be 18 with ID to be in this section.  If you are not 18 with ID you must leave now.  Use of any inappropriate language such as bong, crack pipe, weed, etc. you will be asked to leave.  All of the tobacco pipes are used for tobacco are [sic] herbal blends only.

Appellant testified that the sign with these rules was "[j]ust so [customers] don't misinterpret what we sell, why we sell it, and the use of it."

Detective Glenn Michaels, a ten-year veteran of the Virginia Beach Police Department, was qualified as an expert in the areas of the possession and use of marijuana, controlled substances, and drug paraphernalia.  Michaels examined several items seized from appellant's store.

Michaels identified a round gray item as a device used for smoking a marijuana cigarette.  He identified another item with "4:20" printed on it as a device "commonly used when smoking marijuana," explaining the "4:20" symbol developed out of the drug culture at the University of California at Berkeley in the early 1960s.  The symbol referred to "the international time to get high or smoke marijuana," five minutes after the last classes of the day at Berkeley.  Michaels identified another item as a

hand scale used to weigh narcotics and often found when executing search warrants for drugs.

Michaels also explained in detail a "blow-through" device, for smoking without detection, and an item marked "Formula 4:20," used to clean bongs, smoking devices, and their filters.

Michaels examined all the items seized from the store and testified that only one item was used with regular tobacco – the cigarette rolling papers. He also noted the "Swisher Sweets" and "Phillie Blunts" were used with "just marijuana." Michaels also testified a "roach clip" is not used for tobacco.

Appellant testified he had been selling cigarettes for three months. He identified a sign posted in his store that said, "For tobacco use only, not intended for any other use. We reserve the right to refuse service. Do not enter if you are not 18 or older with photo ID do not enter." He explained the sign might not have been posted when Thompson first came to the store. He also denied using the term, "bong," and selling items for any illegal use.

Appellant testified Thompson told him the first time he came into the store that his stock was "borderline" and he would discuss it with his superiors. Appellant admitted the trooper had shown him the drug paraphernalia statutes, told him that his inventory was drug paraphernalia, and informed him that people "might probably" use the items to smoke marijuana. Appellant admitted he had never used any of the items to smoke tobacco. He also admitted that, despite the expansion of the store, he did not add any additional tobacco items to his stock.

Appellant moved to strike the evidence, arguing the items seized from the Fatty Shack did not fall within the definition of drug paraphernalia in Code §§ 18.2-265.1 and 18.2-265.2. Appellant also claimed the Commonwealth had failed to prove he knew the purchasers of these items intended to use them with illegal drugs.

The trial court overruled appellant's motion and convicted him of selling drug paraphernalia.

## II.  ANALYSIS

Appellant contends the trial court applied the wrong scienter requirement in convicting him, asserting the Commonwealth failed to prove he actually knew the items were either designed or intended for smoking marijuana.  In his brief, appellant also argues the applicable statutes are unconstitutionally vague because the "actual knowledge" scienter requirement is not explicit nor was it applied by the trial court.  Therefore, he argues, the statutes present an opportunity for unconstitutional and arbitrary law enforcement.

We will not address the issue of vagueness since appellant did not raise it below nor was an appeal granted on that issue.[1] Furthermore, appellant did not comply with Code § 19.2-266.2(ii)

_____

[1] "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18.  Accordingly, Rule 5A:18 bars our consideration of these questions on appeal.  Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

by filing a written motion raising this constitutional objection at least seven days before the trial.[2]

Since we do not address the constitutionality of the statute, we need only determine whether the evidence was sufficient to prove the "scienter" element established by the statute.

To convict someone of selling or possessing with intention to sell drug paraphernalia, a trial court must find the defendant (1) sold or possessed with the intent to sell, (2) drug paraphernalia, which (3) he actually knew or reasonably should have known was designed or intended for use in connection with illegal drug use, storage, or production. See Code § 18.2-265.3.

The scienter, or mens rea, element of a crime:

> is simply the unlawful intent or design necessary to any criminal act that is not a strict liability offense. See Reed v. Commonwealth, 15 Va. App. 467, 424 S.E.2d

---

[2] Code § 19.2-266.2 reads in part:

> Defense motions or objections seeking . . . (ii) dismissal of a warrant, information, or indictment or any count or charge thereof on the ground that a statute upon which it was based is unconstitutional shall be raised by motion or objection, in writing, before trial. The motions or objections shall be filed and notice given to opposing counsel not later than seven days before trial. A hearing on all such motions or objections shall be held not later than three days prior to trial, unless such period is waived by the accused, as set by the trial judge. The court may, however, for good cause shown and in the interest of justice, permit the motions or objections to be raised at a later time.

718 (1992); 1 Wayne R. LaFave, Substantive
Criminal Law, § 3.4 (1986); Livingston v.
Commonwealth, 184 Va. 830, 36 S.E.2d 561
(1946).

Saunders v. Commonwealth, 31 Va. App. 321, 324, 523 S.E.2d 509,

511 (2000).  Code § 18.2-265.3(A) includes such a scienter

element.  The Commonwealth must prove a defendant possessed drug

paraphernalia[3]:

> knowing, or under circumstances where one
> reasonably should know, that [the item] is
> either designed for use or intended by such
> person for use to illegally plant,
> propagate, cultivate, grow, harvest,
> manufacture, compound, convert, produce,
> process, prepare, test, analyze, pack,
> repack, store, contain, conceal, inject,
> ingest, inhale or otherwise introduce into
> the human body marijuana or a controlled
> substance.

Code § 18.2-265.3(A) (emphasis added).  The scienter requirement

for a conviction here, therefore, is either actual knowledge or

constructive knowledge[4] ("under circumstances where one

---

[3] Code § 18.2-265.1 defines "drug paraphernalia" as:

> [A]ll equipment, products, and materials of
> any kind which are either designed for use
> or which are intended by the person charged
> with violating § 18.2-265.3 for use in
> planting, propagating, cultivating, growing,
> harvesting, manufacturing, compounding,
> converting, producing, processing,
> preparing, strength testing, analyzing,
> packaging, repackaging, storing, containing,
> concealing, injecting, ingesting, inhaling,
> or otherwise introducing into the human body
> marijuana or a controlled substance.

[4] As we find appellant had actual knowledge of the character
and intended purpose of the items for sale in his shop, we do
not address the constructive knowledge issues in this opinion.

reasonably should know") that the item is "either designed for use" or "intended by [the accused] for use to illegally . . . ingest, inhale, or otherwise introduce into the human body marijuana or a controlled substance."  Id.

To determine on appeal whether the evidence was sufficient to prove this scienter element, we must examine the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The fact finder is not required to believe all parts of a witness' testimony but may accept only some parts as believable and reject other parts as implausible.  See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

Further, any element of a crime may be proven by circumstantial evidence, see, e.g., Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), provided the evidence as a whole "is sufficiently convincing to exclude every reasonable hypothesis except that of guilt," Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  See also Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984).  "'[C]ircumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the only method of proof.'"  Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).  See also Servis, 6 Va. App. at 524, 371 S.E.2d at 165.

In <u>Posters 'N' Things, Ltd. v. United States</u>, 511 U.S. 513 (1994), the United States Supreme Court interpreted former 21 U.S.C. § 857[5] of the Mail Order Drug Paraphernalia Control Act which defined "drug paraphernalia."  The statute defined drug paraphernalia as "'any equipment, product, or material of any kind which is primarily intended or designed for use' with

---

[5] This statute was repealed in 1990.  <u>See</u> Pub. L. 101-647, § 2401(d), 104 Stat. 4859 (1990).  A statute incorporating major sections of this repealed legislation can be found at 21 U.S.C. § 863, which outlaws the sale, offer to sell, use of the mail to transport, and the import or export of drug paraphernalia.

illegal drugs."  Id. at 517.  See Mail Order Drug Paraphernalia

Control Act of 1986, Pub. L. No. 99-570, § 1822, 100 Stat.

3207-51.

The Court held:

> [W]e conclude that a defendant must act
> knowingly in order to be liable under § 857.
> Requiring that a seller of drug
> paraphernalia act with the "purpose" that
> the items be used with illegal drugs would
> be inappropriate.  The purpose of a seller
> of drug paraphernalia is to sell his
> product; the seller is indifferent as to
> whether that product ultimately is used in
> connection with illegal drugs or otherwise.
> If § 857 required a purpose that the items
> be used with illegal drugs, individuals
> could avoid liability for selling bongs and
> cocaine freebase kits simply by establishing
> that they lacked the "conscious object" that
> the items be used with illegal drugs.
>
> Further, we do not think that the knowledge
> standard in this context requires knowledge
> on the defendant's part that a particular
> customer actually will use an item of drug
> paraphernalia with illegal drugs.  It is
> sufficient that the defendant be aware that
> customers in general are likely to use the
> merchandise with drugs.  Therefore, the
> Government must establish that the defendant
> knew that the items at issue are likely to
> be used with illegal drugs.  Cf. [United
> States v.] United States Gypsum, 438 U.S.
> [422, 444 (1978)] (knowledge of "probable
> consequences" sufficient for conviction).  A
> conviction under § 857(a)(1), then, requires
> the Government to prove that the defendant
> knowingly made use of an interstate
> conveyance as part of a scheme to sell items
> that he knew were likely to be used with
> illegal drugs.
>
> Finally, although the Government must
> establish that the defendant knew that the
> items at issue are likely to be used with
> illegal drugs, it need not prove specific

knowledge that the items are "drug paraphernalia" within the meaning of the statute. Cf. <u>Hamling v. United States</u>, 418 U.S. 87 (1974) (statute prohibiting mailing of obscene materials does not require proof that defendant knew the materials at issue met the legal definition of "obscenity"). As in <u>Hamling</u>, it is sufficient for the Government to show that the defendant "knew the character and nature of the materials" with which he dealt. <u>Id.</u> at 123.

<u>Id.</u> at 523–26.

This analysis is applicable to Article 1.1, Chapter 7, of the Virginia Code, which includes Code § 18.2-265.3, as this article is the state equivalent of the federal paraphernalia act. The federal act prohibited the sale or the offer to sell paraphernalia through interstate or international commerce, <u>see</u> § 1822(a), 100 Stat. 3207-51, and Virginia law prohibits the sale or intent to sell paraphernalia, <u>see</u> Code § 18.2-265.3. Both legislative schemes define "drug paraphernalia" in general terms as "any equipment, product" or material "intended" or "designed" "for use in" "manufacturing, compounding, converting," "producing, processing, preparing," or "otherwise introducing into the human body" illegal drugs. <u>See</u> Code § 18.2-265.1; § 1822(d), 100 Stat. 3207-51. Both statutes also define "drug paraphernalia" through non-exclusive examples. <u>See</u> Code § 18.2-265.1; § 1822(d), 100 Stat. 3207-51. Both statutes also include factors a court may consider "[i]n determining whether an item" is "drug paraphernalia." <u>See</u> Code § 18.2-265.2; § 1822(e), 100 Stat. 3207-52.

As the language of our statute and the former federal statute is so similar, the Supreme Court's analysis explaining that language applies here. Therefore, we hold that Code § 18.2-265.3 requires the Commonwealth prove only that appellant was aware when he sold the items, or possessed them with the intent to sell, that buyers "in general" are likely to use the items with illegal drugs, not that a particular buyer intended to use the items in this fashion. Posters 'N' Things, 511 U.S. at 524.

When Thompson first spoke to appellant, he gave him a copy of the applicable statutes, which defined "drug paraphernalia" as including numerous items for sale in the Fatty Shack. When he returned a week later, Thompson told appellant that he had spoken with the Commonwealth's Attorney and other state agencies, concluding that sales of the items were illegal and must cease. Thompson saw no tobacco products for sale in the store at that time. He returned a third time and noticed appellant still had bongs, roach clips, and other such items for sale.

When Thompson returned to issue a summons, appellant said he would not sell these items to any customer who referred to the "water pipes" as "bongs." Appellant had posted rules that

prohibited the use of "any inappropriate language such as bong, crack, pipe, weed, etc. . . ."

Detective Michaels, a narcotics expert, testified that various items seized in appellant's store were used for smoking marijuana, weighing marijuana, and cleaning bongs. Michaels testified he had never seen any of these objects used with "simple tobacco." He further testified a "roach clip" is not used with "simple tobacco." Appellant admitted on the stand that Thompson told him the items were drug paraphernalia and that his customers "might probably . . . use them" for marijuana.

Under the Posters 'N' Things criteria, appellant was aware that "customers in general are likely to use the merchandise with drugs." He admitted under oath that Thompson told him about the typical use of the items. Additionally, the rules posted in the store, warning customers not to use terms such as "bongs" or "weed," further demonstrated his knowledge of the items' illegal uses.

Moreover, he sold few, if any, tobacco products in his store. According to the expert witness, most of the items recovered by Thompson were used with illegal drugs only and had no legitimate tobacco use. Furthermore, the trial judge did not have to accept appellant's testimony that he did not intend to sell products for use with illegal drugs. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). From the evidence presented, the trial judge could

conclude that appellant sold or possessed with the intent to sell drug paraphernalia, knowing the items were either designed for illegal drug use or were intended by the buyer for such use in violation of Code § 18.2-265.3.

Appellant further contends the trial court erred in failing to consider the guidelines set forth in Code § 18.2-265.2. While appellant concedes the guidelines are discretionary, he argues the guidelines "are essential in the statutory scheme."

To the extent appellant maintains we must look to the entire statutory scheme, we agree. However, this examination does not support appellant's argument.

Code § 18.2-265.1 defines drug paraphernalia and then provides a non-exhaustive list of devices included under the definition of drug paraphernalia. The list "includes, but is not limited to:"

> Objects intended for use or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:
>
> a. Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
>
> b. Water pipes;
>
> c. Carburetion tubes and devices;
>
> d. Smoking and carburetion masks;
>
> e. Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;
>
> f. Miniature cocaine spoons, and cocaine vials;

g.   Chamber pipes;

h.   Carburetor pipes;

i.   Electric pipes;

j.   Air-driven pipes;

k.   Chillums;

l.   Bongs;

m.   Ice pipes or chillers.

Code § 18.2-265.1(12).  The list is essentially the same as the examples of drug paraphernalia in former 21 U.S.C. § 857(d).

The Supreme Court, in Posters 'N' Things, characterized this list as "per se paraphernalia."  511 U.S. at 519.  The Supreme Court opined:

> The inclusion of the "primarily intended" term along with the "designed for use" term in the introduction to the list of per se paraphernalia suggests that at least some of the per se items could be "primarily intended" for use with illegal drugs irrespective of a particular defendant's intent that is, as an objective matter.

Id.  Code § 18.2-265.1(12) also introduces its list with the phrases, "intended for use" and "designed for use."

Additionally, the items listed in Code § 18.2-265.1(12) are designed specifically for use with illegal substances.  "Bongs," "roach clips," "chillums," and "smoking and carburetion masks," have no use other than to consume illegal substances.  See Posters 'N' Things, 511 U.S. at 518.

Therefore, the trial court did not need to look beyond the list of items found in Code § 18.2-265.1(12).  The Commonwealth introduced several items photographed or seized from appellant's

shop.[6]  Once this evidence proved appellant offered any of these per se paraphernalia items for sale, the Commonwealth has made a prima facie case.

Code § 18.2-265.2 does provide guidance, as appellant suggests, to courts trying to determine "whether an object is drug paraphernalia."  This section, however, says "the court may consider, in addition to all other relevant evidence, the following," before listing factors such as expert testimony, instructions, advertising, and confessions.  Id. (emphasis added).

"Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest."  Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994).  "Further, 'we may determine the intent of the legislature from a comparison of the statute's several parts in pari materia,' a 'rule of statutory construction that statutes . . . relating to the same subject "should be read, construed and applied together . . . . "'  Hanson v. Commonwealth, 29 Va. App. 69, 77, 509 S.E.2d 543, 547 (1999) (citations omitted)."  Pannell v. Commonwealth, 34 Va. App. 287, 294, 540 S.E.2d 527, 531, aff'd en banc, 35 Va. App. 643, 547 S.E.2d 529 (2001).

If Code § 18.2-265.2, which clearly is permissive and not required, is viewed together with Code § 18.2-265.1, it becomes clear that the legislature intended the objects listed in Code § 18.2-265.1(12) to be drug paraphernalia per se.  Under those

---

[6] Appellant does not deny that several of the items listed in subsection (12) were found in his store.

circumstances, the trial court need not consider the factors set forth in Code § 18.2-265.2.

Other items that are sometimes labeled "drug paraphernalia" have multiple uses, some legal and some illegal.[7]  When the Commonwealth's case is based on the sale of such items, a trial court may consider the factors in Code § 18.2-265.2 to determine whether the "ambiguous" object is drug paraphernalia.

The trial court had sufficient evidence to find appellant intended to sell per se drug paraphernalia and to find he knew the items were drug paraphernalia.  We affirm the conviction.

Affirmed.

---

[7] Examples are scales, some pipes, bowls, containers, balloons, envelopes.  We intend this list to be illustrative and not exhaustive.