COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Kelsey
Argued at Chesapeake, Virginia

LEROY STEVENSON, JR.

MEMORANDUM OPINION[*] BY
v.       Record No. 1210-05-1            JUDGE D. ARTHUR KELSEY
                                          MAY 30, 2006
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

John D. Levin (Levin & Levin, P.C., on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Convicted of possession of cocaine with intent to distribute, Leroy Stevenson, Jr. appeals

on two grounds.  He first claims the evidence, as a matter of law, failed to prove he possessed the

cocaine.  Stevenson next argues that the trial judge erred by admitting into evidence post-arrest

statements he made before being advised of his rights under Miranda v. Arizona, 384 U.S. 436

(1966).  Finding the evidence of possession sufficient and the Miranda argument waived, we

affirm.

I.

At about 7:10 p.m., police officers executed a search warrant at 1379 Watson Street in

Portsmouth.  Entering the house, the officers encountered three individuals in the main room.

This room consisted of a living and dining area, both measuring about eight feet by eight feet.  In

the middle of the room were a sofa and a round table.  Upon seeing the police, one of the

individuals attempted to run out of the house.  Stevenson was standing at the corner of the sofa

about "six feet away" from the table.  Officers found on the table a digital scale, a mirror with

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

cocaine residue, a metal spoon with cocaine residue, razor blades, an open box of Ziplock bags, and "fourteen grams of crack cocaine." The table was approximately four feet in diameter. The drugs and paraphernalia were in plain view on top of the table. One officer found "various types of mail and personal paperwork" on the table, some identifying Stevenson by name. Another officer recovered Stevenson's "personal papers" about "two feet away from the table."

Stevenson was placed in custody. Wearing only a pair of pants, Stevenson asked the officer to bring him his shoes and shirt, which were near the sofa, and his eyeglasses. Officer Lilley then tried "to find out who was the owner of the house" so he could determine who he "needed to notify." Stevenson told the officer it was his "parents' house" but he was "looking out for it" and "living" there while his parents were in Florida.

Stevenson did not file a pretrial motion to suppress his statement. When the subject came up at trial, however, he objected to Officer Lilley's testimony about it.[1] Claiming he made the statement during a custodial interrogation, Stevenson argued that the absence of any <u>Miranda</u> warnings rendered the statement inadmissible. The trial judge denied Stevenson's objection, stating simply "Overruled, go ahead." Another officer, Officer Murray, also testified to the items recovered from the house and that it was his belief that Stevenson was "the owner or the custodian of the house." Stevenson did not object to this testimony.

---

[1] Neither the Commonwealth nor Stevenson addressed Code § 19.2-266.2 in their appellate briefs. Code § 19.2-266.2 requires all motions to suppress alleging constitutional violations to be filed no later than seven days before trial. Absent a showing of good cause and the interests of justice, trial courts should not relieve defendants of this statutory mandate because doing so compromises the Commonwealth's right to an interlocutory appeal of an adverse ruling. <u>See</u> <u>Schmitt v. Commonwealth</u>, 262 Va. 127, 145-46, 547 S.E.2d 186, 189 (2001); <u>Johnson v. Commonwealth</u>, 37 Va. App. 634, 644-45, 561 S.E.2d 1, 6 (2002); <u>Morrison v. Commonwealth</u>, 37 Va. App. 273, 279, 557 S.E.2d 724, 727 (2002); <u>Upchurch v. Commonwealth</u>, 31 Va. App. 48, 51, 521 S.E.2d 290, 291-92 (1999). Here, the trial judge summarily denied Stevenson's objection without elaboration. Though it may well be that the judge's decision rested on Code § 19.2-266.2, we address the merits of Stevenson's motion to suppress assuming *arguendo* the trial judge intended his ruling to do the same.

After the Commonwealth rested its case, Stevenson testified on his own behalf. Stevenson's counsel asked him: "[D]o you recall a search warrant being executed at *your mother's house* on 1379 Watson Street?" (Emphasis added.) In response, Stevenson relayed the events of that day. Earlier that morning, he testified, he bought "a couple bottles of wine" and had already "drunk one of them." He was "laying out" on the sofa where he "usually" sleeps. Around noon, Stevenson's son came to the house with several friends. Although his son stays with his mother, Stevenson testified that he had told his son "to come by *my* house so they won't be out there drinking and driving and stuff. . . . [H]e comes over to *my* house all the time." (Emphasis added.) Stevenson was "a little woozy," so his son asked him to "go back in the bedroom, so they could use the den to shoot some crap or something."

Stevenson claimed he was sleeping in the back bedroom when a cleaning lady woke him up so she could clean the bedroom. He then walked down the hall when the police officers "rammed the door and came in." Stevenson denied ever seeing any drugs or drug-related materials on the table or in the house. He had poor eyesight and was not wearing his eyeglasses, Stevenson explained. The trial judge rejected Stevenson's version of the events and found him guilty of possession of cocaine with the intent to distribute.

On appeal, Stevenson challenges the sufficiency of the evidence to prove he possessed the drugs and the trial court's allowance of his statement to Officer Lilley that he was the caretaker of the house.

## II.

### A. SUFFICIENCY OF THE EVIDENCE ON POSSESSION

When addressing the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447

(2003) (*en banc*) (citations omitted).[2]  In practical terms, this means a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*) (emphasis in original and citation omitted).  We ask only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id.  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Barnes v. Commonwealth, 47 Va. App. 105, 110 n.1, 622 S.E.2d 278, 280 n.1 (2005) (citation omitted).  "It also ensures that we remain faithful to 'our duty not to substitute our judgment for that of the trier of fact, even were our opinion to differ.'"  Id.[3]

Under Code § 18.2-248, constructive possession of drugs can be shown by "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the accused was aware of both the presence and character of the substance and that it was subject to his dominion and control."  Haskins v. Commonwealth, 44 Va. App. 1, 6, 602 S.E.2d 402, 404 (2004) (citations omitted).  As has been often said, "in drug cases no less than any other, it 'is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.'"  Id. (quoting Etherton v. Doe, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004)).

While, standing alone, "mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered" in determining whether the accused constructively possessed drugs.  Kelly, 41 Va. App. at 261, 584 S.E.2d at 449 (citation omitted).

---

[2]  "This standard comes from Code § 8.01-680 — the basis for our appellate review of factfinding in civil and criminal cases as well as bench and jury trials."  Seaton v. Commonwealth, 42 Va. App. 739, 747 n.2, 595 S.E.2d 9, 13 n.2 (2004).

[3]  See also Haskins v. Commonwealth, 44 Va. App. 1, 7, 602 S.E.2d 402, 405 (2004); Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003); Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992).

Likewise, a factfinder may also take into account the open visibility of the drugs as well as the defendant's occupancy of the premises. Eckhart v. Commonwealth, 222 Va. 447, 451, 281 S.E.2d 853, 855 (1981) (finding the "trial court could reasonably conclude that she was aware of the contents of the room" based on her "occupancy of the premises as a cotenant" and where she was "sitting outside the open door to a room" where drugs and paraphernalia "were visible").[4]

In this case, Stevenson invited his son and his son's friends over to his house. This was not the first time they had visited. They were in the house with Stevenson from noon until 7:10 p.m. when the police arrived. Stevenson was found in the main room of the house, about "six feet away" from a small table. In plain view of anyone in the room were fourteen grams of cocaine accompanied by the accoutrements of the cocaine trade — razor blades, a glass surface, a digital scale, and baggies. Stevenson's personal documents were found nearby. The totality of these circumstances provides a rational basis for the trial judge, as factfinder, to conclude beyond a reasonable doubt that Stevenson "was aware of both the presence and character" of the cocaine and that "it was subject to his dominion and control." Haskins, 44 Va. App. at 6, 602 S.E.2d at 404 (citation omitted).[5]

---

[4] See also Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982) (finding relevant the defendant's proximity to the drugs along with her "occupancy of the premises"); Womack v. Commonwealth, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979) (*per curiam*) ("[I]t can be reasonably concluded from the quantity and visibility of the drugs . . . that the defendant was in constructive possession of the drugs . . . ."); Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997) (stating that "proximity to the contraband" and "occupancy of the premises" provide probative evidence of constructive possession).

[5] The trial court had no obligation to accept Stevenson's claim to the contrary. In its role as factfinder, the trial court may discount a defendant's "self-serving explanation as a mere effort at 'lying to conceal his guilt.'" Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003) (quoting Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001)).

That Stevenson's dominion and control may have been shared with others (his son and his son's friends) in no way exculpates him from criminal liability. "Possession need not be actual, exclusive, or lengthy in order to support a conviction; instead, the statute criminalizes constructive or joint possession of illegal drugs of any duration." Wells v. Commonwealth, 32 Va. App. 775, 781, 531 S.E.2d 16, 19 (2000). The *actus reus* of the possession statute focuses on dominion and control over — not ownership of — the illegal drugs. For this reason, "a person may constructively possess drugs owned by another." Hamilton v. Commonwealth, 16 Va. App. 751, 756, 433 S.E.2d 27, 29 (1993) (quoting Harrison v. Commonwealth, 12 Va. App. 581, 585, 405 S.E.2d 854, 857 (1991)).

## B. ADMISSIBILITY OF DEFENDANT'S STATEMENT

Stevenson next argues that the trial judge erred by allowing one of the arresting officers to testify that Stevenson admitted to being the caretaker of the house where the cocaine was found. Stevenson claims he made this statement prior to receiving any Miranda warnings. We find it unnecessary to address this contention.

The Miranda rule is "a fundamental *trial* right." United States v. Patane, 542 U.S. 630, 641 (2004) (plurality opinion) (citations omitted and emphasis in original). As a result, the "mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule." Id. "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial." Id. The right to exclude unwarned statements from trial, therefore, can be waived like any other evidentiary objection.

Under settled principles, when a defendant "unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence." Combs v. Norfolk & W. Ry., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998); Riner v. Commonwealth, 40 Va. App. 440, 476-78,

579 S.E.2d 671, 689 (2003); see also Ohler v. United States, 529 U.S. 753, 755-56 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."); Charles E. Friend, The Law of Evidence in Virginia § 8-4, at 295 (6th ed. 2003) (explaining waiver where "the objecting party introduces the same type of evidence").

Waiver of the challenged evidence occurs whenever the objector "can be fairly held responsible for its presence in the case." Pettus v. Gottfried, 269 Va. 69, 79, 606 S.E.2d 819, 825 (2005). Such responsibility exists when the objecting party "has elicited evidence dealing with the same subject as part of his own case-in-chief." Id. When this occurs, an appellate court "cannot reverse for alleged error." Bynum v. Commonwealth, 28 Va. App. 451, 459, 506 S.E.2d 30, 34 (1998) (quoting Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992)).[6]

At trial, Stevenson objected to his statement that the house belonged to "his parents" and that he was "looking out for it" and "living" there while they were away. During his case-in-chief, however, Stevenson repeatedly referred to the house as "my house." He invited his son and his son's friends over to "my house," Stevenson explained, just as he had done in the past. He also testified that he "usually sleeps on the couch" at the house. Stevenson offered his explanation of the incident in response to his counsel's questions about what happened that day at "his mother's house."

Because Stevenson introduced evidence of "the same character" during his case-in-chief, Bynum, 28 Va. App. at 459, 506 S.E.2d at 34, he necessarily waived any objection to the Commonwealth's introduction of his post-arrest statements. See Drinkard-Nuchols v. Andrews, 269 Va. 93, 103-04, 606 S.E.2d 813, 819 (2005) ("Even if such evidence was inadmissible, a

---

[6] "Some courts so hold because the error is harmless, and others because the subsequent introduction of the same evidence is a waiver of the objection. Whether it be placed upon one ground or the other, the result is the same." New York Life Ins. v. Taliaferro, 95 Va. 522, 523, 28 S.E. 879 (1898).

question we do not decide, 'it furnishes no ground for reversal'" as she introduced evidence on the "same subject" in "her case-in-chief." (citation omitted)). For this reason, we do not address the correctness of the trial court's denial of Stevenson's <u>Miranda</u> objection at trial.

III.

In sum, we reject Stevenson's challenge to the sufficiency of the evidence supporting his conviction and find he waived his <u>Miranda</u> objection to the admissibility of his post-arrest statements. We thus affirm his conviction.

<u>Affirmed.</u>